## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### Civil Action No.: 1:20-cv-2102-WJM-NRN

**BURNIS HEARD**, an individual,

        Plaintiff,

    v.

**SYNERGY CREDIT SERVICES LLC**,
a Colorado limited liability company,
**MICHAEL KASICK**, an individual, and
**JENNIFER KASICK**, an individual,

        Defendants.

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, SYNERGY CREDIT SERVICES LLC, MICHAEL KASICK, and JENNIFER KASICK, by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, and D.C. COLO. LCivR 56.1, hereby move for summary judgment as to all claims, and state:

### CONFERRAL

Pursuant to D.C. Colo. LCivR 7.1(b)(3), conferral on this motion is not required but Plaintiff was made aware of Defendants' intent to file this Motion in advance.

### INTRODUCTION

Plaintiff Burnis Heard ("Plaintiff"), a former Synergy Credit Services LLC ("Synergy") employee, brings five claims of alleged overtime violations under the Colorado Wage Claim Act ("CWCA"), § 8-4-101 *et seq.* and the Fair Labor Standards Act ("FLSA") 29 U.S.C. § Act

("FLSA") in a Verified Complaint.  Count I alleges a violation of the FLSA - failure to pay overtime. Count II alleges a violation of the Colorado Wage Act - failure to pay overtime.[1]  Count III alleges breach of contract (verbal) - failure to pay overtime. *2nd - Count III* - alleges promissory estoppel - failure to pay overtime.[2]  Count IV alleges unjust enrichment.  The Defendants have denied the material allegations for each claim and asserted 12 affirmative defenses, including that the Plaintiff has failed to state a claim upon which relief may be granted: Plaintiff has never worked more than 40 hours a week and Plaintiff has been paid all wages due.

As all claims allege the failure to pay overtime as a core issue, this Motion will address all aspects of that allegation first.

## BACKGROUND AND STATEMENT OF FACTS

Synergy is a Colorado limited liability company that provides credit repair services. Compl. & Ans. ¶ 7.  Defendant Michael Kasick is an owner and officer of Synergy. Compl. & Ans. ¶ 17.  Defendant Jennifer Kasick is an equity owner and officer of Synergy.  (collectively "the Kasicks") Compl. & Ans. ¶ 18.   Andrew Nuntapreda ("Nuntapreda") was hired as CEO to set up and manage Synergy.  JK Depo at 32:1-6.  Plaintiff began working for Synergy on June 4, 2018.  Compl. & Ans. ¶ 19. Plaintiff was hired as a salaried employee by Nuntapreda.  JK Depo at 38:18-25. Plaintiff was told by Nuntapreda verbally over the phone that he was hired by Synergy, what his starting salary would be, what commissions he would be eligible for, and what his job

---

[1]   The Counts do not indicate against whom they are asserted.  Count II is the only claim that uses the term "Defendants" and is, therefore, the only claim which could be directed at the individual Defendants, the Kasicks. Synergy is the only Defendant even alleged to have contracted, promised or paid the Plaintiff anything.

[2]   The Verified Complaint includes two Count IIIs: One is breach of contract and the other is a claim for promissory estoppel.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

duties would be.  JK Depo at 38:18-25. BH Depo at 14:2-8.  Plaintiff's salary (in excess of $40,000 per year) was sufficient to satisfy (nearly double) the base salary for an employee hired under administrative exemption from overtime under the FLSA and CWCA.

As for Plaintiff's interactions with the individual Defendants, Plaintiff stated that he rarely interacted with Michael Kasick, seeing him occasionally at company parties and seeing his name on an email maybe once a month. Heard Depo at 31:15-16. In addition, Plaintiff stated that he would occasionally contact Jennifer Kasick if he needed something and a manager wasn't available. BH Depo at 31:3-12. He also stated that he wasn't aware of her position or job title with Synergy. BH Depo at 31:5.

As was the case with other employees hired for his position, Plaintiff was never required to clock in, or otherwise keep his time, though Synergy did, however, expect him (and all salaried employees) to work full-time for the salary paid and his work could be tracked generally through his log-ons to the CRM program. JK Depo at 95:25-96:13. Plaintiff continued to work through December 12, 2019 when the company closed its office in Aurora, Colorado and offered to move employees to their Greeley, Colorado offices.  Plaintiff declined to relocate and resigned, but was offered, as a courtesy, a two week's severance. *Defendants' Production*, Bates Stamped as "Synergy – 0031."

On or about March 23, 2020 Plaintiff, through counsel, sent Defendants a demand letter demanding unpaid overtime wages under the CWCA and FLSA.  The demand letter asserted that the Plaintiff's termination was "unjust, which was only made worse by issues of unpaid wages and overtime…"  The demand letter stated that Plaintiff sent an email to Jennifer Kasick in Synergy's human resources department on April 30, 2019 asking about his overtime hours worked and when

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

they would be paid to him…"  Jennifer Kasick has stated she never received such an email from Plaintiff and never responded to such an email. JK Depo at 48:6-49:10. There is no evidence that Plaintiff ever followed up on this alleged email and never raise the issue of unpaid overtime wages with anyone at Synergy during the next eight months he worked there, except for a casual conversation with fellow salesman Leo Lefebre. BH Depo at 33:1-9.  Although, Plaintiff claimed in the Verified Complaint that he had a conversation with Michael Kasick after the alleged email he did not remember that conversation or discuss it at his deposition.  BH Depo at 31:18-25.

The basis for the alleged overtime claims asserted in the demand letter were one year of calendars kept by Plaintiff as a requirement of his felony sentence and assignment to a halfway house. BH Depo at 24:3-25:2. The calendars were not, and were never meant to be, a record of Plaintiff's work hours at Synergy. JK Depo at 50:6-50:11. In fact the name Synergy doesn't appear on any of the calendars. BH Depo at 24:3-25:2. All of the calendars indicate that they were prepared for "COMMUNITY SUPPORT TRACKING" on behalf of the Plaintiff's halfway house for purposes of tracking his whereabouts when not at the halfway house. BH Depo at 24:3-25:2. They were not prepared as work calendars indicating the exact number of hours which Plaintiff worked for Synergy. JK Depo at 69:19-70:3.

Additionally, Plaintiff would occasionally request that someone in the office initial these calendars in blank so that he could fill in the correct times for the halfway house. JK Depo at 69:19-70:3. Defendant Synergy's employee, Nathaniel Eubanks ("Eubanks"), has stated that Plaintiff asked him on some days to initial Plaintiff's Calendars "to show his counselor that he was at work and not somewhere else." Eubanks Aff. ¶ 10. Plaintiff never once told Eubanks that the Calendar was for hours worked. Eubanks Aff. ¶ 11. On every occasion, the Calendar was blank when

4

Eubanks put his initials on it. Eubanks Aff. ¶ 9. None of the Defendants were aware that Plaintiff was claiming that the hours listed in his calendar were hours that he was working. JK Depo at 69:19-70:3. None of the calendars tracked lunch breaks or any breaks, and Plaintiff stated that there were times when he was out of the office visiting family that may not be recognized on the calendars. BH Depo at 27:9-28:2; *Defendants' Production*, Bates Stamped as "Synergy – 0030." Many of the calendars track church and community events on Sundays when Synergy's offices were closed. *Plaintiff's Initial Disclosures*. The calendars were clearly not made for the purpose of tracking time worked for Synergy.

Defendants have stated that there has never been a need or requirement for an employee to work more than 40 hours a week at Synergy. *Defendants' Answer to Interrogatory*, #13. Defendants have stated that they were not aware of any overtime worked by Plaintiff, or of any approval of alleged overtime. *Defendants' Answer to Interrogatory*, #5. JK Depo at 79:8-10, 79:16-18, 80:3-5; and 91:4-6. Defendants have stated that they have no correspondence about requests for overtime or any information from the Plaintiff or his managers alleging overtime hours worked. *Defendants' Answer to Interrogatory*, #12. Plaintiff has stated that, during the time when he was employed by Synergy, the only people to whom he gave his Calendars were his community corrections case managers. *Plaintiff's Answer to Interrogatory*, #5.

Defendants, MICHAEL KASICK and JENNIFER KASICK and SYNERGY CREDIT SERVICES LLC, now move for summary judgment as to all Plaintiff's claims regarding the Kasicks as there are no allegations or evidence that the Kasicks are or were employers as that term is defined by the CWCA or FLSA; and as to all Defendants based on the administrative exemption, or alternatively, based upon the lack of record evidence, that there is no basis for a reasonable jury

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

to return a verdict in favor of Plaintiff finding that the Plaintiff worked hours in excess of 40 hours

per week during his employment with Synergy.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when there is no basis for a reasonable jury to return a

verdict for the party opposing the motion. *See Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1128 (10th

Cir. 2009) (citing cases). Summary judgment is proper when there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact

is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of [our rules] as a whole." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 327 (1986). "One of the principal purposes of the summary judgment rule

is to isolate and dispose of factually unsupported claims or defenses…." *Celotex*, 477 U.S. at 323-

24.

A dispute over a material fact is "genuine" if a rational jury could find in favor of the

nonmoving party on the evidence presented. *Id.* at 248; *E.E.O.C. v. Horizon/CMS Healthcare Corp.*,

220 F.3d 1184, 1190 (10th Cir. 2000). The moving party has the burden to show the absence of

a genuine factual dispute. *Concrete Works, Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517

(10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.

2000).

Once the motion has been properly supported, the burden shifts to the non-movant to show,

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper because there is a "genuine issue for trial on a material matter." *Concrete Works, Inc*., 36 F.3d at 1518.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### I.  EXEMPTIONS FROM OVERTIME PAY UNDER THE CWCA AND FLSA.

Considering whether an employee is exempt from overtime requirements under the CWCA and/or FLSA follows the same general analysis as the overtime exemptions under the CWCA are largely similar to those in the FLSA. *Compare* 7 CCR § 1103-1(5) (2018) [3] ("Colorado Minimum Wage Order 34") (listing the executive, administrative, and professional exemptions from Colorado overtime pay) *with* 29 CFR § 541.0 (same).  Exemptions are not specifically defined in the FLSA or the CWCA.  Rather, the Department of Labor ("DOL") and the Colorado Department of Labor and Employment ("CDLE") are responsible for determining the operative definitions of these terms through interpretive regulations. 29 U.S.C. § 213(a)(1); C.R.S. § 8-6-108.5. Generally, these regulations are entitled to judicial deference, *see Udall v. Tallman*, 380 U.S. 1, 16 (1965), and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA. *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996). However, the primary source for determining the scope and extent of exemptions under Colorado law (Colorado Minimum Wage Orders 33 and 34 during Plaintiff's employment) are far less detailed than the Code of Federal Regulations.  Thus, the Court should rely on the DOL's

---

[3] The 2018 version of the Colorado Minimum Wage Order is cited because it is one version applicable during the relevant time period here. Archived versions of the Colorado Minimum Wage Order and related Fact Sheets are accessible on the Colorado Department of Labor and Employment's website at: https://cdle.colorado.gov/wage-and-hour-law/wage-order-archive.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

regulations and interpretations to assist its interpretation of Colorado's overtime exemptions under the CWCA. *See Div. of Emp't & Training v. Moen*, 767 P.2d 1230, 1233 (Colo. App. 1988) (Colorado courts will turn to similar federal regulations for guidance on interpreting similar state law).

These exemptions can be established under the following test: 1) The employee must be paid a predetermined and fixed salary (the "salary basis test"); 2) the amount of salary paid must meet a minimum specified amount (the "salary level test") ($455 per week during the relevant time period here under the FLSA and $408 under Colorado's then-minimum wage); and 3) the employee's job duties must primarily involve executive, administrative, or professional duties as defined by the regulations (the "duties test").

It is the employer's burden to show that an employee is exempt from overtime under the FLSA and CWCA but, importantly, the United States Supreme Court recently held that exemptions are to be given a fair, rather than a narrow, interpretation. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *Latham v. High Mesa Communs.*, Civil Action No. 17-cv-02118-JLK-GPG, 2020 U.S. Dist. LEXIS 60455 (D. Colo. Feb. 7, 2020).

### A. Plaintiff's Employment Satisfied The Salary Basis And Salary Level Tests Applicable To Overtime Exemptions Under Colorado And Federal Law.

First, it is undisputed that Plaintiff was paid a fixed salary of $40,000 per annum. This exceeds the $23,660 per annum salary threshold under the FLSA in effect during Plaintiff's employment, which is also greater than the CWCA salary threshold.[4]  Thus, Plaintiff met the salary

---

[4] The only salary test in Colorado Minimum Wage Orders 33 and 34 which applies to exemptions at § 5(b) state that the employee must earn "in excess of the equivalent of the minimum wage for all hours worked in a workweek." Plaintiff's salary exceeded this even if

8

basis and salary level tests for overtime exemption under Colorado and federal law.

**B. Plaintiff's Employment Satisfied The Duties Test Under The Professional, Executive, And/Or Administrative Exemptions Permitted By Colorado And Federal Law.**

§ 541.200 General rule for administrative employees.

(a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. "Primary duty" means "the principal, main, major or most important duty that the employee performs." 29 CFR § 541.700(a).  To ascertain an employee's primary duty, courts analyze all aspects of an employee's job, with major emphasis on the character of the job as a whole.  *Id.*  The analysis includes the relative importance of the exempt duties as compared to other types of duties, the amount of time spent performing exempt work, the employee's relative freedom from direct supervision, and the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee.  *Id.*

Plaintiff was hired as a sales manager.  He was completely in charge of his job – answering to no one beyond his obligations to come to work, recruit and sign up customers (for which he received additional compensation).  JK Depo at 37:2. His duties were subject to an understanding and interpretation of the laws in Colorado which governed credit repair services and contracts.  JK

---

calculating the threshold at Colorado's higher minimum wage in 2018 ($10.20) and even assuming Plaintiff worked 50 hours every week (he did not).

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

Depo at 18:19. His direct supervisor was the company CEO.  BH Depo at 14:3; 31:5; JK Depo at 38:18.

### C. Synergy Properly Classified Plaintiff As An Exempt   Employee Under The <u>Administrative</u> Exemption Permitted By Colorado And Federal Law.

Plaintiff was properly classified as an exempt employee under the administrative employee exemption.  Pursuant to 29 CFR § 541.200(a)(2)–(3), an administrative exempt employee's primary duty is: i) the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and ii) includes the exercise of discretion and independent judgment with respect to matters of significance.  Under the applicable Colorado Minimum Wage Orders, an administrative employee directly serves the executive, and regularly performs duties important to the decision-making process of the executive while exercising independent judgment and discretion in matters of significance.  Colo. Min. Wage Or. 33/34, § 5(a). Their primary duty is non-manual in nature and directly related to management policies or general business operations.  *Id.*  Plaintiff's employment at Synergy also satisfies these criteria.  Plaintiff was hired by the CEO, worked under the CEO, and handled public relations (JK Depo at 37:1-25; 56:10).

### i.  *Plaintiff's Primary Duty Was the Performance of Office or Non-Manual Work Directly Related to the Management or General Business Operations of the Employer or the Employer's Customers.*

Work directly related to an enterprise's management or general business operations often occurs in the following functional areas: quality control, purchasing, safety and health, personnel management, government relations, and legal and regulatory compliance.  *See* 29 C.F.R.   §  541.201(b).  This list is illustrative, not exhaustive.

10

First, and foremost, it is undisputed that Plaintiff did little, if any, manual work. *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) ("the FLSA does not require complete abstention from non-exempt duties in order for the exempt classification to be proper.").  He was specifically hired as a "sales manager" who received additional compensation if he signed up customers who needed the company's services. He had the authority to make that determination. JK Depo at 37:1-26.

Importantly, Plaintiff's primary duty was non-manual and directly related to management and general business operations, as described above. *Id.* In sum, it is undisputed that Plaintiff's role and responsibilities while employed at Synergy satisfy this prong of the administrative employee exemption.

### ii. *Plaintiff's Primary Duty Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance.*

Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to interpret or implement management policies or operating practices; whether the employee performs work that affects business operations to a substantial degree; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee is involved in planning long- or short-term business objectives; and whether the employee investigates and resolves matters of significance on behalf of management. *See* 29 CFR § 541.202(b).

Here, again, Plaintiff was hired for his experience in the industry and his independent

11

judgment and skill set. JK Depo at 37:1-5.  29 CFR § 541.202(c) further states that the exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.  Further, the fact that more than one employee performs identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.  29 CFR § 541.202(d).  Notably, independent judgment and discretion need not be exercised in complete isolation of one's colleagues. *Bagwell v. Fla. Broadband, Ltd. Liab. Co.*, 385 F. Supp. 2d 1316, 1326 (S.D. Fla. 2005) (finding the employee exempt when, *inter alia*, employee exercised independent judgment and discretion in collaboration with fellow employees); *Demos v. City of Indianapolis*, 126 F. Supp. 2d 548, 563 (S.D. Ind. 2000) (citing *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 535 (7th Cir. 1999)) ("The FLSA does not require this judgment to be made in isolation. Even work subject to approval or performed collaboratively can constitute evidence of the exercise of discretion and independent judgment.").

In sum, Synergy properly classified Plaintiff as an exempt employee, not subject to overtime requirements at the state or federal level, because his duties aligned with those described by the administrative employee exemption under Colorado and federal law.

## II.   AN EMPLOYER MUST HAVE ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE OVERTIME WORK

Plaintiff's claim for overtime wages for hours which he allegedly worked in excess of forty per week is governed by 29 USC §207(a)(1). "Under §207(a)(1), a plaintiff must also show that he was employed by the defendant employer in order to prove a violation." *Robertson v. Board of County Comrs of County of Morgan*, 78 F.Supp.2d 1142, 1160 (D. Colo. 1999). As defined in 29

12

USC §203(9), "employ" includes the phrase "suffer or permit to work." The words "suffer" and "permit" as used in §203(9) have been interpreted to mean work performed with the knowledge of the employer. *Robertson*, 78 F.Supp.2d at 1160 *citing*, *Davis v. Food Lion*, 792 F.2d 1274 (4th Cir. 1986), *Fox v. Summit King Mines*, 143 F.2d 926, 932 (9th Cir. 1944). "To satisfy this requirement, courts have uniformly held that *a plaintiff must show, as an element of his case, that his employer knew or should have known of his overtime work*. *Robertson*, 78 F.Supp.2d at 1160.

"An employer must have an opportunity to comply with the provisions of the FLSA. This is not to say that an employer may escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation. However, *where the acts of an employee prevent an employer from acquiring knowledge ... of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of § 207(a).*" *Robertson*, 78 F.Supp.2d at 1160; *see also McGrath v. Central Masonry Corp.*, 276 Fed.Appx. 797, 799 (10th Cir. 2008) ("...a plaintiff proceeding under § 207(a)(1) must also show that the employer had actual or constructive knowledge of the overtime."); *Boyer v. Celerity Solutions Group, LLC*, 482 F.Supp.3d 1122, 1132 (D. Colo. 2020) ("To prevail on a claim under 29 U.S.C. § 207(a)(1), a plaintiff-employee must show 'that he actually worked overtime in an amount that can be established by justifiable and reasonable inference,' and 'that the employer had actual or constructive knowledge of the overtime.'").

### A. The Kasicks Had No Actual Or Constructive Knowledge That Plaintiff Was Allegedly Working Greater Than Forty Hours Per Week Prior To April 30, 2019.

The record evidence in this case is clear that, prior to Plaintiff's email to Jennifer Kasick

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

dated April 30, 2019, the Kasicks were unaware that Plaintiff had undertaken to work more than 40 hours in any given week. The Kasicks have stated that there has never been a need or requirement for an employee to work more than 40 hours a week at Synergy. *Defendants' Answer to Interrogatory*, #13. The Kasicks have stated that they were not aware of any overtime worked by Plaintiff, or of any approval of alleged overtime. *Defendants' Answer to Interrogatory*, #5. The Kasicks have stated that they have no correspondence about requests for overtime or any information from the Plaintiff or his managers alleging overtime hours worked. *Defendants' Answer to Interrogatory*, #12. Plaintiff has stated that, during the time when he was employed by Synergy, the only people to whom he gave his Calendars were his community corrections case managers. *Plaintiff's Answer to Interrogatory*, #5. These facts are undisputed.

Plaintiff has nowhere alleged or produced documents which reflect that the Kasicks, prior to April 30, 2019, were aware or should have been aware that Plaintiff had worked more than 40 hours in any given week. As a matter of law, the Kasicks cannot have permitted or suffered Plaintiff to work in excess of 40 hours a week since they did not know or have reason to know that Plaintiff was allegedly working greater than 40 hours a week prior to the April 30, 2019 email. Additionally, Plaintiff's own acts prevented the Kasicks from learning of his alleged overtime work because Plaintiff never provided notice of his overtime hours to the Kasicks during that period of time. Under the circumstances, the Kasicks cannot have committed a §207(a) violation prior to April 30, 2019.

**B.**     **Synergy Had No Actual or Constructive Knowledge that Plaintiff was Allegedly Working Greater Than Forty Hours During Weeks Where Plaintiff's Calendars Were Signed by Nathaniel Eubanks**

Defendant Synergy's employee, Nathaniel Eubanks ("Eubanks"), has stated that Plaintiff

14

asked him on some days to initial Plaintiff's Calendars "to show his counselor that he was at work and not somewhere else." Eubanks Aff. ¶ 10. Plaintiff never once told Eubanks that the Calendar was for hours worked. Eubanks Aff. ¶ 11. On every occasion, the Calendar was blank when Eubanks put his initials on it. Eubanks Aff. ¶ 9. Based on the foregoing testimony, Plaintiff engaged in fraudulent misrepresentation in order to obtain documents which appear to indicate Synergy's approval or ratification of overtime hours, when in fact Synergy had no notice.

Additionally, Eubanks' testimony is clear that Plaintiff did not give Synergy any notice of his alleged overtime work for those weeks during which Eubanks' signed a blank Calendar and which Plaintiff thereafter filled in his hours. Since those Calendars were then delivered only to Plaintiff's community corrections case managers, Synergy had no actual or constructive knowledge of overtime work having occurred for those weeks. Under the circumstances, Synergy cannot have committed a §207(a) violation for failing to pay overtime for those weeks initialed by Eubanks on Plaintiff's Calendars.

### III. DEFENDANT MICHAEL KASICK IS NOT AN "EMPLOYER" AS THAT TERM IS DEFINED BY COLORADO AND FEDERAL LAW AND IS NOT SUBJECT TO PERSONAL LIABILITY.

Preliminarily, the Verified Complaint does not clearly indicate which Count is directed to which Defendant.  Count II - Violation of the Colorado Wage Act - failure to pay overtime - is the only Count which refers to the collective "Defendants" and the only claim that could conceivably be directed to Michael Kasick.[5]   Second, the Verified Complaint does not even alleged that

---

[5]    As a matter of law both Count IIIs (breach of contract and promissory estoppel) and Count IV (unjust enrichment) cannot apply to the individual Defendants since there is no allegation that Plaintiff worked for Michael Kasick or Jennifer Kasick.  The Plaintiff has stated he was hired by

Michael Kasick is an employer as that term is defined by the FLSA or CWCA so it is not clear that the definitional "employer" analysis is even appropriate.[6]  Plaintiff here merely seeks to hold a company owner personally liable for alleged violations of the FLSA and CWCA without more.

Even assuming, without admitting, that a definitional analysis is necessary, this Court in *Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1167–68 (D. Colo. 2019), analyzed the law on the subject stating:

> The Tenth Circuit has never held that owners of a corporate employer that employed an FLSA plaintiff may also be considered that plaintiff's employer(s). But other courts have held as much, see, e.g., *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984); *Donovan v. Agnew*, 712 F.2d 1509, 1511–12 (1st Cir. 1983) and the Hungerfords do not argue that individual liability is *per se* unavailable in these circumstances (see ECF No. 40 at 5 n.4). Accordingly, the Court turns to the question of how to identify an "employer" for FLSA purposes.
>
> The FLSA says that "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This District normally examines the following four factors to determine if an alleged employer should be deemed an employer under the FLSA:
>
> > An employer under the [FLSA] is someone who:
> > 1)   has the power to hire and fire the employee;
> > 2)   supervises and controls the employee's work schedule or conditions of employment;
> > 3)   determines the rate and method of payment; and
> > 4)   maintains employment records.

---

Synergy (Compl. & Ans. ¶ 20) and paid by Synergy. Breach of contract, promissory estoppel and unjust enrichment would only lie against Synergy, if at all.

[6]   (6) "Employer" has the same meaning as set forth in the federal "Fair Labor Standards Act", 29 U.S.C. sec. 203 (d), and includes a foreign labor contractor and a migratory field labor contractor or crew leader; except that the  provisions of this article do not apply to the state or its agencies or entities, counties, cities and counties, municipal corporations, quasi-municipal corporations, school districts, and irrigation, reservoir, or drainage conservation companies or districts organized and existing under the laws of Colorado.  Colorado Wage Act § 8-4-101, *et seq.*, C.R.S.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

*Robertson v. Bd. of Cnty. Comm'rs of Cnty. of Morgan*, 78 F. Supp. 2d 1142, 1151 (D. Colo. 1999). "No one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity." *Id.* (internal quotation marks omitted).

Here, the Plaintiff alleges "[u]pon information and belief," that Michael Kasick is an equity owner and officer of Synergy (ECF No. 1 ¶ 17), but ownership by itself is not relevant under the Robertson factors. **Plaintiff does not allege** that Michael Kasick is responsible for Synergy's pay practices, including the pay practices described in the Verified Complaint, and does not allege he exercises substantial control over its finances and operations.

In the *Inniss* case, the complaint did allege in conclusory fashion that:

> the Hungerfords, and each of them, are responsible for RMI's pay practices, including the pay practices described herein, and exercise substantial control over its finances and operations. For example, and without limitation, each of the Hungerfords were responsible for determining and implementing RMI's pay practices described herein, each had input into or final decision-making authority over hiring and firing of employees of RMI, including Plaintiff, and each was involved in monitoring employee performance, maintaining records thereof, and taking corrective action with respect thereto.

*Inniss* at p. 1148. The *Inniss* court said, however, "This essentially parrots the *Robertson* test, and is therefore an insufficient 'threadbare recital[ ] of the elements of a cause of action,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), unless it is supported by specific factual content." *Id.*  The *Innis* court did ultimately find other allegations in the complaint specific to the individuals sued sufficient (when taken together) to survive a motion to dismiss, however we have none of that here.  We have no allegation that Michael Kasick is an employer; no allegation that he was Plaintiff's employer; no allegations relevant to the *Robertson* factors and, taking the Verified Complaint as it is drafted, there is one single potential, yet wholly insufficient,

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

count against Michael Kasick.  To the extent it has not already done so based on other arguments, the Court should dismiss all claims against this Defendant.

### IV.   DEFENDANT JENNIFER KASICK IS NOT AN "EMPLOYER" AS THAT TERM IS DEFINED BY COLORADO AND FEDERAL LAW AND IS NOT SUBJECT TO PERSONAL LIABILITY.

As stated in the section above, the Verified Complaint does not clearly indicate which Count is directed to which Defendant.  Count II - Violation of the Colorado Wage Act - failure to pay overtime - is the only Count which refers to the collective "Defendants" and the only claim that could conceivably be directed to Jennifer Kasick.  Second, the Verified Complaint does not even alleged that Jennifer Kasick is an employer as that term is defined by the FLSA or CWCA so it is not clear that the definitional "employer" analysis is even appropriate.[7]  Plaintiff, again, here merely seeks to hold a company owner personally liable for alleged violations of the FLSA and CWCA without more.

Even assuming, without admitting, that a definitional analysis is necessary, this Court in *Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1167–68 (D. Colo. 2019), analyzed the law on the subject stating:

> The Tenth Circuit has never held that owners of a corporate employer that employed an FLSA plaintiff may also be considered that plaintiff's employer(s). But other courts have held as much, see, e.g., *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984); *Donovan v. Agnew*, 712 F.2d 1509, 1511–12 (1st Cir.

---

[7]   (6) "Employer" has the same meaning as set forth in the federal "Fair Labor Standards Act", 29 U.S.C. sec. 203 (d), and includes a foreign labor contractor and a migratory field labor contractor or crew leader; except that the provisions of this article do not apply to the state or its agencies or entities, counties, cities and counties, municipal corporations, quasi-municipal corporations, school districts, and irrigation, reservoir, or drainage conservation companies or districts organized and existing under the laws of Colorado.  Colorado Wage Act § 8-4-101, *et seq.*, C.R.S.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

1983) and the Hungerfords do not argue that individual liability is *per se* unavailable in these circumstances (see ECF No. 40 at 5 n.4). Accordingly, the Court turns to the question of how to identify an "employer" for FLSA purposes.

The FLSA says that "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This District normally examines the following four factors to determine if an alleged employer should be deemed an employer under the FLSA:

> An employer under the [FLSA] is someone who:
> 1) has the power to hire and fire the employee;
> 2) supervises and controls the employee's work schedule or conditions of employment;
> 3) determines the rate and method of payment; and
> 4) maintains employment records.

*Robertson v. Bd. of Cnty. Comm'rs of Cnty. of Morgan*, 78 F. Supp. 2d 1142, 1151 (D. Colo. 1999).

"No one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity." *Id.* (internal quotation marks omitted).

As with Defendant Michael Kasick, the Plaintiff alleges "[u]pon information and belief," that Jennifer Kasick is an equity owner and officer of Synergy (ECF No. 1 ¶ 18), but ownership by itself is not relevant under the Robertson factors. ***Plaintiff does not allege*** that Jennifer Kasick is responsible for Synergy's pay practices, including the pay practices described in the Verified Complaint, and does not allege she exercises substantial control over its finances and operations.

In the *Inniss* case, the complaint did allege in conclusory fashion that:

> the Hungerfords, and each of them, are responsible for RMI's pay practices, including the pay practices described herein, and exercise substantial control over its finances and operations. For example, and without limitation, each of the Hungerfords were responsible for determining and implementing RMI's pay practices described herein, each had input into or final decision-making authority over hiring and firing of employees of RMI, including Plaintiff, and each was involved in monitoring employee performance, maintaining records thereof, and taking corrective action with respect thereto.

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

*Inniss* at p. 1148

The *Inniss* court said, however, "This essentially parrots the *Robertson* test, and is therefore an insufficient 'threadbare recital[ ] of the elements of a cause of action,' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), unless it is supported by specific factual content." *Id.* The *Innis* court did ultimately find other allegations in the complaint specific to the individuals sued sufficient (when taken together) to survive a motion to dismiss, however we have none of that here. We have no allegation that Jennifer Kasick is an employer; no allegation that she was Plaintiff's employer; no allegations relevant to the *Robertson* factors and, taking the Verified Complaint as it is drafted, there is one single potential, yet wholly insufficient, count against Jennifer Kasick. The Court should dismiss all claims against this Defendant.

## CONCLUSION

There is no genuine dispute that Plaintiff's role and responsibilities meet the definitions of an exempt employee under Colorado and federal law. Indeed, to find that Plaintiff and similar sales managers in Colorado are non-exempt would not only be contrary to the letter and spirit of the law, but would also have a profoundly negative impact on the Colorado local businesses such as Synergy who pay significantly more than the thresholds for salaried employees in this self-managed administrative position.

Additionally, though Defendants deny that there is any competent evidence that the Plaintiff worked overtime. Plaintiff, at best, seemingly has undertaken to record alleged overtime hours in secret. Defendants herein cannot have violated 29 USC §207(a) for overtime which Plaintiff even potentially chose to perform or record, but affirmatively acted to conceal from Defendants. Though Defendants unequivocally dispute the entirety of Plaintiff's claim, certain

20

time periods contain no record evidence, ***and no allegation***, that Defendants knowingly permitted or suffered Plaintiff's work in excess of 40 hours per week, as is required to find a violation of the FLSA's overtime wage provisions. The evidence is clear that the Plaintiff did not "clock-out" when he left work to take lunch or attend to family matters, and his alleged time records are faulty and unsupported. From June 4, 2018 through April 30, 2019, there is no testimony, document, or allegation that Synergy was aware that Plaintiff had allegedly chosen to work overtime. The same is true for the weeks during which the initials "NE" appear on Plaintiff's Calendars. Mr. Eubank's sworn testimony is that he was asked to sign those calendars ***in blank*** because they were merely halfway house documents. Therefore, Synergy had no actual or constructive knowledge, through its employee, of Plaintiff's alleged overtime work for those weeks.

Finally, there are no allegations that the Kasick Defendants were "employers" as that term is defined under the FLSA and CWCA, and there is no evidence for either assertion.  Absent either or both there is no personal liability.  Plaintiff was undisputedly hired by CEO Andrew Nuntapreda, and Plaintiff's interactions with the Kasicks, who were in a different part of the state, were secondary.  There is no evidence that the Kasicks personally entered into a contract Plaintiff, or personally promised him anything, or were personally unjustly enriched by his work.  All claims against the Kasick Defendants should be dismissed.

**WHEREFORE**, Defendants respectfully request that the Court grant summary judgment as to all claims and in favor of all Defendants finding for Defendants together with all relief the Court deems just and proper.

REINER & REINER, P.A.
ONE DATRAN CENTER ♦ 9100 SOUTH DADELAND BLVD ♦ SUITE 901 ♦ MIAMI ♦ FLORIDA ♦ 33156 ♦ TEL: 305 670-8282 ♦ FAX: 305 574-0810

Dated: November 2, 2021                   Respectfully Submitted,

                                          **REINER & REINER, P.A.**
                                          *Counsel for Defendants*
                                          9100 So. Dadeland Blvd., Suite 901
                                          Miami, Florida   33156-7815
                                          Tel: (305) 670-8282; Fax: (305) 670-8989
                                          *dpr@reinerslaw.com; eservice@reinerslaw.com*

                                          By:  */s/ David P. Reiner, II*
                                              **DAVID P. REINER, II**; Fla. Bar No. 416400

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY that on **November 2, 2021**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.*

**REINER & REINER, P.A.**
*Counsel for Defendants*
9100 So. Dadeland Blvd., Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
*dpr@reinerslaw.com; eservice@reinerslaw.com*

By:  /s/ David P. Reiner, II
**DAVID P. REINER, II**, Fla. Bar No. 416400

REINER & REINER, P.A.
ONE DATRAN CENTER • 9100 SOUTH DADELAND BLVD • SUITE 901 • MIAMI • FLORIDA • 33156 • TEL: 305 670-8282 • FAX: 305 574-0810