**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2102-WJM-NRN

BURNIS HEARD

      Plaintiff,

v.

SYNERGY CREDIT SERVICES LLC,
MICHAEL KASICK, and
JENNIFER KASICK

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Burnis Heard brings this action against Defendants Synergy Credit

Services LLC ("Synergy"), Michael Kasick, and Jennifer Kasick (collectively,

"Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 *et seq.*, violations of the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. §

8-4-101 *et seq.*, breach of contract, promissory estoppel, and unjust enrichment.  (ECF

No. 1.)  Heard claims that he was unlawfully denied overtime wages during his

employment at Synergy.  (*Id.*)

Before the Court is Defendants' Motion for Summary Judgment ("Motion") (ECF

No. 25).  For the reasons explained below, the Motion is granted in part and denied in

part.

## I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  BACKGROUND[1]

Synergy is a Colorado-based credit repair services company, founded in 2016 by Michael and Jennifer Kasick.  (ECF No. 25-2 at 15:7–9.)  According to Jennifer Kasick, Synergy's *raison d'être* is to do credit repair the "right way"—that is, to only enroll people who can actually benefit from credit repair services.  (ECF No. 25-2 at 36:16– 37:5.)  Also involved in the early days of Synergy was self-titled "Credit Ninja" Andrew Nuntapreda, who served as Synergy's first CEO.  (ECF No. 25-2 at 21:12–13; ECF No. 29-3 ¶ 2.)  In June 2018, Synergy hired Plaintiff, who had previously worked with

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Nuntapreda at another credit repair business, to work at Synergy's Aurora office with a salary of $40,000 per year plus commissions.  (ECF No. 25-3 at 14:7–17; ECF No. 29-3 at ¶ 13.)  In December 2019, Synergy consolidated its office locations, closing the Aurora office and moving those employees and operations to Greeley, Colorado.  (ECF No. 25-2 at 63:8–18, 64:7–16.)  Plaintiff was unable to make this move and was terminated.  (ECF No. 25-2 at 63:19–23.)

During the relevant time, Synergy's business consisted of several "teams": (i) outside sales; (ii) inside sales; (iii) customer service; and (iv) processing.  (ECF No. 25-3 at 39:19–40:3; ECF No. 25-2 at 55:8-16.)  Outside sales generated leads for the inside sales team by marketing Synergy's credit repair services to lending companies and asking for referrals.  (ECF No. 25-3 at 11:24–12:20.)  These lending companies would then refer to Synergy loan applicants who had been denied due to poor credit by giving their contact information to Synergy's outside sales team.  (*Id.*)  Synergy's outside sales team would, in turn, pass these "leads" onto inside sales.  (*Id.*)  Inside sales was responsible for turning these "leads" into paying customers, by calling the referred loan applicants to discuss Synergy's services, assessing their ability to pay Synergy, and signing them up.  (ECF No. 29-2 ¶ 5.)  The parties dispute whether members of the inside sales team were responsible for assessing the appropriateness of a potential customer for Synergy's services, but there is no dispute that the actual credit repair services were provided by the customer service and processing teams.  (*compare* ECF No. 25-2 at 35:13–36:2, *with* ECF No. 29-2 ¶ 5.)

Plaintiff worked in inside sales, and the parties dispute whether Plaintiff's title was inside sales "manager" or "representative."  (ECF No. 29 at 14.)  Initially, Plaintiff

was the sole member of the inside sales team, but eventually Synergy hired Leo

LeFebre.  (ECF No. 25-2 at 36:3–4, 58:19–22.)  The record is clear that LeFebre was

Plaintiff's peer and not his subordinate.  (*Id.* at 53:25–54:14.)  Plaintiff was supervised

by Nuntapreda until Nuntapreda was terminated, after which Plaintiff was supervised by

National Sales Director Michael Schreiner. (ECF No. 29-4 ¶ 11.)  The parties agree that

Plaintiff had comparatively little contact with the Kasicks: first, because they generally

worked out of their home in Windsor, Colorado, and moreover because Michael Kasick

supervised the upper-level sales team and Jennifer Kasick focused on the customer

service and processing aspects of the business.  (ECF No. 29-3 ¶ 6.)  Plaintiff did,

however, communicate with Michael Kasick approximately once per month via e-mail

and would come to Jennifer Kasick with issues requiring management's input when a

manager was not available.  (ECF No. 25-3 at 32:13–16.)

The parties dispute the nature of Plaintiff's job responsibilities; whether Plaintiff

was expected or required to work more than 40 hours per week; whether Plaintiff in fact

worked more than 40 hours per week; and, if Plaintiff did work more than 40 hours per

week, whether Defendants had knowledge of Plaintiff's overtime.

From Defendants' point of view, Plaintiff worked independently and Synergy

relied upon his experience in and knowledge of the credit repair industry.  (ECF No. 25-

2 at 35:13–36:2.)  Plaintiff was given wide latitude to assess the appropriateness of

Synergy's services for the potential customers he called, and this discretion bound

Synergy.  (*Id.*)  Plaintiff, on the other hand, describes his role as constrained.  Plaintiff

was given lists leads and their contact information, generated by the efforts of the

outside sales team, and he was supposed to call those leads and sell them Synergy's

4

services.  (ECF No. 29-2 at ¶¶ 2, 5.)  Plaintiff stresses that his demanding sales quotas did not permit him to filter leads based on whether they would benefit from credit repair services.  (*See* ECF No. 29-3 at 7 ¶¶ 20–21.)  Further, Plaintiff contends that filtering in this way was explicitly not his job—rather, the customer service or processing teams, supervised by Jennifer Kasick, were to make those decisions.  (ECF No. 29-2 at ¶ 5.)

Defendants assert that no Synergy employee was required to work more than 40 hours per week, and as support and context for this assertion, note that Synergy employees were required to "request" overtime if their work required them to work more than 40 hours in any given week.[2]  (ECF No. 25-2 at 45:19–25)  Defendants assert that Plaintiffs work responsibilities could be completed satisfactorily while working 38 to 40 hours per week.  (*Id.* at 73:4–11.)

Plaintiff paints a very different picture.  According to Plaintiff, the work expectations set by Defendants (particularly sales quotas) were impossible to meet while working standard, 40-hour work weeks.  (ECF No. 29-3 at 7 ¶¶ 20–21.)  Plaintiff claims to have regularly worked longer hours and provides declarations from two experienced salespeople (and former Synergy employees) indicating that meeting the sales goals Defendants set for Plaintiff required working more than 40 hours per week. (*Id.*; ECF No. 29-4 at ¶ 16.)  In addition to these declarations, Plaintiff points to an e-mail from Schreiner[3] specifically commending Plaintiff for working "a few hours on [a] Saturday."  (ECF No. 29-2 at ¶¶ 12–13.)  In that e-mail, Schreiner goes on to say, "I don't care if you (salespeople) have to work 12 hour days" to hit monthly sales quotas.

---

[2] This was not a written policy, but Synergy was a small company, and Defendants contend that this policy was well known.  (*See* ECF No. 25-5 at ¶ 8.)

[3] Both Michael and Jennifer Kasick were copied on this email.

(*Id.*)

The basis for Plaintiff's claim of unpaid overtime is a year of calendars tracking his whereabouts.  Defendants attack the veracity and reliability of the calendars in several ways.  Defendants contend they did not direct Plaintiff to maintain or supply Plaintiff with these calendars.  (ECF No. 25 at 4.)  Instead, Defendants claim the calendars' only purpose was to monitor Plaintiff's activity in connection with his residence at a "halfway house."  (*Id.*)  Defendants also dispute the accuracy of the time entries, alleging they leave out the long (allegedly sometimes two hours) lunch breaks Plaintiff would take.  (ECF No. 25-2 at 100:17–23.)  According to Defendants, the initials from Synergy employees on the calendars do not show that the entries are accurate, because Plaintiff would have the calendars initialed while blank, only to fill in time entries later.  (*See id.* at 69:13–70:3.)

Plaintiff agrees that Defendants did not ask him to fill out the calendars.  (ECF No. 25-2 at 24:6–26:2.)  Plaintiff also agrees that the calendars were originally provided by his halfway house, and he used them to report on his activity.  (*Id.*)  Plaintiff disagrees that this was the only purpose of the calendars, claiming that he also kept them for his own personal records.  (*See* ECF No. 29-2 at ¶ 11.)  Plaintiff disputes that he took long lunch breaks or visited his children during work hours.  (ECF No. 25-3 at 28:9–29:21.)  And Plaintiff disputes that he had Synergy employees initial the calendars when they were blank.  (*Id.* at 30:1–10.)

### III. ANALYSIS

A.    **FLSA**

The Tenth Circuit has observed that "Congress enacted the FLSA in order to protect all covered workers from substandard wages and oppressive working hours,

6

labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1187 (10th Cir. 2015) (internal quotation marks omitted) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)); *see also Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011) ("The purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'" (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460 (1948))).  "The FLSA effectuates this purpose by 'generally requir[ing] an employer to pay its employees at a rate of one and one-half times their regular rate of pay for any time worked in excess of forty hours in a given workweek.'" *Id.* (quoting *Archuleta v. Wal–Mart Stores, Inc.*, 543 F.3d 1226, 1228 (10th Cir. 2008).  Thus, "the statute provides for overtime pay in specified circumstances." *Id.* (citing 29 U.S.C. § 207(a)(2)).

A plaintiff alleging a violation of the overtime requirement bears the burden of proving by a preponderance of the evidence that: (1) he was in an employment relationship with the defendant; (2) he was engaged in activities within the coverage of the FLSA; (3) he worked over forty hours within a workweek without overtime compensation; and (4) he is owed a definite amount of compensation.  29 U.S.C. § 207(a)(1).  Accordingly, if an employee satisfies his burden of proving that his employer is violating the FLSA, he may be entitled to recover unpaid overtime compensation and liquidated damages.  *See Ellis*, 779 F.3d at 1187 (citing 29 U.S.C. § 216(b)).  However,

there are exemptions to the overtime requirement, and relevant to this case is the

exemption for employees who are employed in an administrative capacity.  *See* 29

U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.200.  The burden of proving an exemption is on

the employer.  *See Hagadorn v. M.F. Smith & Assocs., Inc.*, 1999 WL 68403, at *2 (10th

Cir. 1999).  The Supreme Court has stated that "[b]ecause the FLSA gives no 'textual

indication' that its exemptions should be construed narrowly, 'there is no reason to give

them anything other than a fair (rather than a 'narrow') interpretation.'"  *Encino*

*Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (citation omitted).

       1.        <u>Administrative Exemption</u>

The core of Defendants' Motion is that Plaintiff is not entitled to overtime pay

because he is an exempt administrative employee under the FLSA (and consequently,

the CWCA).[4]

Under the FLSA "any employee employed in a bona fide executive,

administrative, or professional capacity . . . (as such terms are defined and delimited

from time to time by regulations of the Secretary [of Labor] . . .)" are exempt from the

FLSA's overtime pay requirements.  29 U.S.C. § 213(a)(1).  Under the FLSA's

"administrative" exemption, an employee's primary duty must involve work directly

related to general business operations or management and customarily and regularly

involve the use of discretion and independent judgment with respect to matters of

significance, and the employee must be paid at least $455 per week on a "salary basis."

*See* 29 C.F.R. § 541.200.  The parties agree that Plaintiff meets both the "salary basis"

and the "salary level" aspects of this test.  (*See* ECF No. 25 at 8–9; ECF No. 29 at 12.)

---

[4] Defendants argue the Court should read the administrative exemption in the CWCA as congruent with the analogous exemption in the FLSA.  (*See* ECF No. 25 at 7–8.)

Thus, whether Plaintiff is exempt hinges on whether Plaintiff satisfies the "duties" aspect of the test.  (ECF No. 29 at 12.)

The meaning of the phrase "discretion and independent judgment" should be applied "in light of all the facts involved in the particular employment situation."  29 C.F.R. § 541.202(b).  "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  *Id.* at § 541.202(b).  The regulations promulgated by the Department of Labor provide a long but non-exhaustive list of relevant factors:

> Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.*

Defendants argue "Plaintiff was hired for his experience in the industry and his independent judgment and skill set."  (ECF No. 25 at 11–12.)  In support, they cite

Jennifer Kasick's deposition, in which she testified, "we trusted Burnis [Heard] to decide whether somebody would legitimately fit the program based on his skill set because he had extensive experience in the industry."  (ECF No. 25-2 at 37:1–5.)   While Defendants go on to (correctly) point out certain factual scenarios that do not undermine a finding that an employee exercises discretion and independent judgment,[5] this one statement from Jennifer Kasick is the only evidence Defendants cite to support their argument that the only conclusion a reasonable jury could reach is that Plaintiff exercised discretion and independent judgment.

In response, Plaintiff identifies several pieces of evidence tending to show that he did not exercise discretion or independent judgment.  According to declarations from Plaintiff, Nuntapreda, and Schreiner, Plaintiff had very little choice or control over who he called, how he described Synergy's services, what price to charge, or the other terms and conditions would apply.  (ECF No. 29-2 at ¶ 5; ECF No. 29-3 at ¶ 17; ECF No. 29-4 at ¶ 18.)  In his declaration, Scheiner indicated that he directly supervised Plaintiff and instructed Plaintiff that it was not his job to assess whether Synergy's services could help any particular potential customer.  (ECF No. 29-4 at ¶ 18.)  Instead, Plaintiff's job was to "enroll anyone who could pay Synergy's fees for its services."  (*Id.*)

Plaintiff also contests that he was a "Sales Manager," citing both Defendants'

---

[5] Defendants argue the "fact that more than one employee performs identical work or work of the same relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance." (ECF No. 25 at 12 (*citing* 29 CFR § 541.202(d)).)  Defendants argue that "independent judgment and discretion need not be exercised in complete isolation of one's colleagues."  (*Id.* (*citing Bagwell v. Fla. Broadband, LLC*, 385 F. Supp. 2d 1316, 1326 (S.D. Fla. 2005)).)  Whether or not Defendants are right on the law—which the Court does not consider—these are legal arguments, not evidence; and Defendents' sole piece of evidence is met by conflicting evidence provided by the Plaintiff.

stipulation that Plaintiff was a "sales person" and their response to one of Plaintiff's interrogatories in which Defendants identify Plaintiff's title as "Sales Representative." (ECF No. 29.)  Further, Plaintiff notes that Jennifer Kasick testified that Plaintiff managed no staff.  (ECF No. 25-2 at 60:21–61:3.)  Plaintiff denies Jennifer Kasick's testimony that Plaintiff handled "public relations." (ECF No 29-4 at ¶ 13)

Defendants have the burden of showing Plaintiff is exempt, and the Court is skeptical that five lines of testimony from Jennifer Kasick's Rule 30(b)(6) deposition can bear the weight of its burden, given the procedural posture of this Motion.  Regardless, the Plaintiff has raised evidence suggesting his duties were circumspect: that he did not have "authority to formulate, affect, interpret, or implement management policies or operating practices"; that he did not have "authority to commit the employer in matters that have significant financial impact"; that he did not have "authority to waive or deviate from established policies and procedures without prior approval"; and that he did not have "authority to negotiate and bind the company on significant matters."  *See* 29 C.F.R. § 541.202(b).

Accordingly, the Court finds that the determination whether Plaintiff is an exempt employee under the FLSA presents genuine questions of material fact.

2.      Defendants' Knowledge

Defendants also argue that partial summary judgment on the FLSA claim is appropriate because there is no genuine question of material fact as to whether Defendants had actual or constructive knowledge that Plaintiff allegedly worked overtime during certain weeks.  (ECF No. 25 at 12 (*citing Robertson v. Bd. Cnty. Comm'rs*, 78 F. Supp. 2d 1142, 1160 (D. Colo. 1999); *see also McGrath v. Central Masonry Corp.*, 276 F. App'x 797, 799 (10th Cir. 2008)).)

a.      *The Kasicks*

The Kasicks argue that they cannot be liable for any alleged overtime prior April

30, 2019 because "Plaintiff has nowhere alleged or produced documents [that] reflect

that the Kasicks, prior to April 30, 2019, were aware or should have been aware that

Plaintiff had worked more than 40 hours in any given week."  (ECF No. 25 at 14.)  The

Kasicks also point to Defendants' and Plaintiff's written discovery indicating the

following "undisputed" facts: (1) "The Kasicks have stated that there has never been a

need or requirement for an employee to work more than 40 hours a week at Synergy";

(2) "The Kasicks have stated that they were not aware of any overtime worked by

Plaintiff, or of any approval of alleged overtime."; (3) "The Kasicks have stated that they

have no correspondence about requests for overtime or any information from the

Plaintiff or his managers alleging overtime hours worked."; and (4) "Plaintiff has stated

that, during the time when he was employed by Synergy, the only people to whom he

gave his Calendars [sic] were his community corrections case managers."  (*Id.*)

Plaintiff responds with two pieces of evidence relating to the Kasicks' knowledge

of Plaintiff's alleged overtime prior to April 30, 2019.  First, Nuntapreda testified that on

or about April 30, 2019, Jennifer Kasich verbally instructed him to tell Plaintiff that

Plaintiff was salaried and therefore not entitled to overtime.  (ECF No. 29-3 at ¶ 24.)

Nuntapreda remembers raising his voice with Plaintiff because "this was not the first

time Mr. Heard had asked this question and been told he was not entitled to overtime."

(*Id.*)  Nuntapreda believed this statement to be true based on "Mr. and Ms. Kasicks[']

statements" to him.  (*Id.*)  Further, Nuntapreda recalled Plaintiff asking him about

overtime "several times prior to April 2019," and Nuntapreda "personally passed along

Mr. Heard's questions about overtime to Mr. and Ms. Kasick."  (*Id.*)  Second, the

calendars reflect that it was Nuntapreda who initialed for the weeks beginning with February 4 and February 11, 2019.  (ECF No. 25-3 at 67.)

Taking Plaintiff's evidence together, the Court finds that Plaintiff has raised a genuine issue of material fact whether the Kasicks knew about his alleged overtime prior to April 30, 2019.

> b.    *Synergy*

Synergy makes a more limited argument than the Kasicks.  According to Synergy, it could not have actual or constructive knowledge that Plaintiff was working overtime during the weeks that employee Nate Eubanks initialed Plaintiff's calendars. (ECF No. 25 at 14–15.)  This argument is based on Eubanks's declaration that Plaintiff never told him that the calendars were intended to record Plaintiff's work hours and always presented him with a blank calendar.  (ECF No. 25-5 at ¶¶ 9–11.)  Synergy argues that this testimony shows that "Plaintiff engaged in fraudulent misrepresentation in order to obtain documents [that] appear to indicate Synergy's approval or ratification of overtime hours, when in fact Synegy had no notice."  (ECF No. 25 at 15.)

Plaintiff provides evidence in direct contradiction of Eubanks's testimony.  First, Plaintiff testified both in his deposition and in his declaration attached in response to the Motion that he always filled in his hours before asking a fellow employee to initial the calendars.  (ECF No. 25-3 at 30:1–10; ECF No. 29-2 at ¶ 12.)  Nuntapreda and Schreiner's declarations indicate that the hours were always filled out when Plaintiff presented the calendars for their initials (ECF No. 29-3 at ¶ 22; ECF No. 29-4 at ¶¶ 19–20), and Nuntapreda went on to state that, based on his experience with the calendars and knowledge of Plaintiff's conduct at Synergy, he was "confident Mr. Heard did not present blank calendar sheets to anyone at Synergy."  (ECF No. 29-3 at ¶ 23.)

Eubanks initialed more entries than anyone else (*see* ECF No. 25-3 at 58–68), and perhaps Plaintiff presented the calendars in a different state to Eubanks than he did to Nuntapreda and Schreiner.  Perhaps Plaintiff is lying as Synergy argues, and Nuntapreda's assessment of Plaintiff's integrity is wrong.  (ECF No. 25 at 15.)  But weighing the conflicting evidence and determining the credibility of these witnesses is the province of the jury, and most definitely not of this Court.

Because a reasonable jury could credit Plaintiff's witnesses over Eubanks, the Court finds that Plaintiff has raised a genuine issue of material fact regarding Synergy's knowledge of Plaintiff's alleged overtime hours.

3.     The Kasicks' Status as "Employers"

The Kasicks also argue that summary judgment on the FLSA claim should be granted in their favor because there are not sufficient facts to support their status as Plaintiff's "employer."  (ECF No. 25 at 18–20.  Courts use a four-factor test in determining whether a party is an employer as that term is used in the FLSA:

> An employer under the [FLSA] is someone who:
>
> 1) has the power to hire and fire the employee;
>
> 2) supervises and controls the employee's work schedule or conditions of employment;
>
> 3) determines the rate and method of payment; and
>
> 4) maintains employment records.

*Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1167–68 (D. Colo. 2019) (alteration in original) (citing *Robertson v. Bd. Cnty. Comm'rs*, 78 F. Supp. 2d 1142, 1151 (D. Colo. 1999)).  "No one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity."  *Id.*

(quoting *Robertson*, 78 F. Supp. at 1151).[6]

Plaintiff has presented evidence that the Kasicks had the power to hire and fire Synergy employees—even the most high-ranking ones like former-CEO Nuntapreda. (ECF No. 29-3 at ¶ 6; *see also* ECF No. 25-2 at 7:23–9:4.)  According to Nuntapreda, "[Michael] Kasick had final approval of *all* hires[,] but he typically concentrated on the sales team . . . and [Jennifer] Kasick focused on hiring and salary decisions for her processing team." (ECF No. 29-3 at ¶ 6 (emphasis added).)  Jennifer Kasick testified that she personally made the decision to fire Plaintiff. (ECF No. 25-2 at 64:4–6.)  There is evidence that the Kasicks controlled when, how, and where Synergy employees worked. (ECF No. 25 at 75:14–25, 99:13–100:16.)  Plaintiff has submitted evidence that the Kasicks worked collaboratively with Nuntapreda in setting salary levels at the time Plaintiff was hired. (ECF No. 29-3 at ¶ 2.)  And there is evidence that Michael Kasick was personally responsible for submitting payroll and Jennifer Kasick was Plaintiff's primary contact whenever there was a perceived mistake in his pay. (*Id.* at ¶ 9; ECF No. 25-2 at 82:6–19.)  Jennifer Kasick testified that she would personally "make sure that [Plaintiff] was paid to his satisfaction" whenever there was a perceived mistake over his commissions and that Plaintiff "had an open line of communication with [her] to discuss any payroll issues." (ECF No. 25-2 at 82:6–19.)  Nuntapreda was responsible for maintaining employment records while he served as CEO, but transferred those records to Jennifer Kasick about two months before his departure in June 2019. (ECF No. 29-3 at ¶ 9.)

---

[6] Although *Robertson* uses the phrase "economic realities," its test should not be confused with the "economic realities test" for deciding whether an alleged employee is actually an employee instead of an independent contractor. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

Based on this evidence, the Court also finds that Plaintiff has raised a genuine issue of material fact as to whether the Kasicks were his employers as that term is used in the FLSA.

Therefore, the Kasicks are not entitled to summary judgment on Plaintiff's FLSA claim.

## B.    CWCA

Defendants' only argument for summary judgment on Plaintiff's CWCA claim is that because Plaintiff was exempt under the FLSA, he must also be exempt under the CWCA.  (ECF No. 25 at 7–12.)  Plaintiff argues that the CWCA's administrative exemption is narrower than the analogous FLSA exemption, so he could be exempt under the FLSA and nonexempt under the CWCA.  (ECF No. 29 at 15–18.)

Because the Court finds there are genuine issues of material fact regarding Plaintiff's exemption under the FLSA, it need not consider whether the CWCA's exemption is narrower.  Under Defendants' theory that the exemptions are congruent, the Motion fails with respect to the CWCA claim as well.

## C.    Common Law Claims

Finally, the Kasicks argue they are inappropriate Defendants for Plaintiff's remaining claims of breach of contract, promissory estoppel, and unjust enrichment. (ECF No. 25 at 15 n.5.)  The Court agrees.  Plaintiff has failed to point to any evidence permitting a jury to find his employment contract was with any party other than Synergy, that any promise regarding the terms of his employment was made by any Defendant other than Synergy, or that his efforts working at Synergy were for the benefit of any party other than Synergy.  (*See* ECF No. 29.)  And while Plaintiff has provided evidence to support his position that the Kasicks were more involved in the day-to-day operations

16

of Synergy than they let on, he has not argued, let alone provided any evidence, that

Synergy is the Kasicks' alter ego. *See Stockdale v. Ellsworth*, 407 P. 3d 571, 576–77

(Colo. 2017).  As owners of Synergy, the Kasicks stood to benefit from Plaintiff's

contributions to Synergy to the extent those efforts resulted in greater profit for the

business, but Synergy is a separate entity from the Kasicks capable of entering into

employment contracts independent of its owners.

The parties devote little effort to discussing these three claims, and the Motion

reads as if they are tied solely to the determination of the Kasicks' status as "employers"

for purposes of the FLSA and CWCA.[7]  (*See* ECF No. 25 at 15 n.5.)  But, the bounds of

the employer-employee relationship are "not limited by any contractual terminology or

by traditional common law concepts." *Baker*, 137 F.3d at 1440.  The Supreme Court

has noted that the FLSA's definition of "employee" has "striking breadth."  *Id.* (*citing*

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).  And the definition of

"employer" incorporates that broad definition.[8]  While the Court finds sufficient evidence

for a jury to find that the Kasicks were "employers" under the broad statutory definitions

of the FLSA and CWCA, it does not necessarily follow that this evidence can support a

determination of this same status for purposes of Plaintiff's common law claims.

Therefore, the Court finds that Plaintiff has failed to raise a genuine issue of

material fact with respect to his common law claims against the Kasicks, and the Motion

is granted as to these claims.

---

[7] Defendants clarify in their reply, that they seek summary judgment on these common law claims because the FLSA's broad definition of "employer" does not apply.  (ECF No. 37 at 7–8.)

[8] "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an *employee*."  29 U.S.C. § 203(d) (emphasis added).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 25) is GRANTED in part and DENIED in part as follows:

1.      The Motion is GRANTED with respect to Plaintiff's common law claims against the Kasicks;

2.      The Motion is DENIED in all other respects; and

3.      This case remains set for a Final Trial Preparation Conference on January 27, 2023 and a four-day jury trial to begin on February 13, 2023.

Dated this 13th day of July, 2022.

BY THE COURT:

William J. Martinez
United States District Judge